IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Charles Grater,                                    Case No. 3:22 CV 318

        Plaintiff,                        MEMORANDUM OPINION

        -vs-                                JUDGE JACK ZOUHARY

Damascus Township Trustees, et. al.,

        Defendants,

### INTRODUCTION

What is constitutionally required before the government can declare a nuisance, haul away your personal property to sell as scrap, and stick you with the bill?  That is the question before this Court.

In 2018, Defendant Damascus Township Trustees declared Plaintiff Charles Grater's property a "nuisance" (Doc. 1-1).  After Grater did not comply with the abatement notice, Damascus Township contracted with Defendant Bates Recycling, Inc. to remove 1.5 million pounds of vehicles, equipment, and trash from the property.  Grater unsuccessfully sought relief in state court, then filed this federal suit, asking this Court to scrap Ohio's nuisance-abatement law because it violates the Fifth and Fourteenth Amendments of the U.S. Constitution (Doc. 1 at 11–16).

### BACKGROUND

Grater is a farmer and life-long resident of Damascus Township (*id.* at 4).  In the 1950s, Grater's father began buying farm equipment at auction and reselling it, using his two-acre property for storage in the interim (*id.*).  The Township did not adopt a zoning ordinance for another decade

(*id.*). Grater inherited the family business after his father's passing, and expanded both the farming operation and the used-equipment business.

In 2015, the Township began sending Grater formal Notices that he was violating its zoning ordinance. *See State v. Grater,* 2018 WL 3629165, at *1 (Ohio Ct. App. 2018). In May 2017, Grater received notice that he "had until June 10, 2017 to bring [his] [p]roperty into compliance with the [ordinance]." *Id.* When Grater failed to comply, the Township charged him with eighteen criminal misdemeanors -- nine counts of dumping and nine counts of unlawful property use (Doc. 19-4 at 1–3). In December 2017, Grater was found guilty on all counts. *Grater*, WL 3629165, at *1. The convictions were upheld on appeal. *Id.* at *13.

On August 27, 2018, the Township held a meeting at which the Trustees voted to declare Grater's property a nuisance. On September 10, 2018, Grater received a Notice which stated (Doc. 1-1):

> Please be advised that pursuant to Section 505.87 of the Ohio Revised Code[(R.C.)], the Board of Damascus Township Trustees (the "Board") declared your maintenance of the refuse and other debris on your property located at 2636 County Road M constitutes a nuisance, of which you are hereby ordered to remove or abate. See R.C. 505.87(A) and (B)(1). More specifically, you have seven (7) days from the date of this letter to remove or abate the nuisance (refuse and other debris), which includes, but is not limited to, all of the junk motor vehicles, scrap, rubbish, pallets, tires, etc.
> If the nuisance is not removed or abated, or if provision for its abatement or removal is not made, within seven (7) days of the date of this letter, the Board shall provide for the abatement or removal, and any expenses incurred by the Board in performing that task shall be entered upon the tax duplicate and become a lien upon the land from the date of entry. See R.C. 505.87(B)(2).

Grater responded by requesting a hearing, which was held October 9, 2018. At the hearing, Grater and the Township each presented sworn witness testimony and submitted several exhibits (Doc. 22). Grater also offered to fence in his property, but the Township declined (*id.* at 117). On October 29, 2018, the Trustees voted to reaffirm that Grater's property was a nuisance (Doc. 1 at 16).

The following month, Grater filed a lawsuit in state court challenging the Township action (*id.* at 6). The court dismissed each of Grater's claims, but held an evidentiary hearing on the question of whether Grater's property was "grandfathered" as a nonconforming use (*id.*). After the hearing, the court granted the Township's Motion for a Directed Verdict (*id.* at 6–7). Both sides appealed. The appellate court found that because R.C. 505.87 proceedings are not "quasi-judicial," Grater was not entitled to judicial review. *Grater v. Damascus Twp. Trs.*, 2021-Ohio-1929, ¶¶ 16–18 (Ohio Ct. App. 2021). "Consequently, the parties [were left] in the same position they were in after the Trustees issued their October 29, 2018 resolution affirming their initial August 27, 2018 nuisance declaration." *Id.* at ¶ 24. The Supreme Court of Ohio declined to hear the case.

With the legal challenge over, the Township made arrangements for the abatement on December 6, 2021 (Doc. 12 at 5). But wait. On December 9, Grater filed a Motion for a Temporary Restraining Order and Preliminary Injunction in state court (Doc. 1 at 9). Those requests were denied on December 13 (*id.*). By that time, the Township had hired Bates and the removal process had begun (*id.*). The process took several weeks (*id.* at 9–10). When finished, Bates removed over 1.5 million pounds of equipment and materials, including 70 titled vehicles. The Township credited Grater nearly $171,770 for scrap (Doc. 21-1). This left an outstanding bill of approximately $60,000, which the Township intends to assess as a lien against Grater's land (Doc. 1 at 10).

Grater seeks rulings from this Court that R.C. 505.87 is unconstitutional, and that Defendants unlawfully took his property without just compensation (*id.* at 2). The parties filed briefs (Docs. 12–17); this Court held oral argument (Doc. 21); and the parties submitted supplemental exhibits to their filings (Docs. 19–20, 22). The constitutional issues are addressed in turn.

**DUE-PROCESS STANDARD**

42 U.S.C. Section 1983 allows individuals to bring claims in federal court for due-process violations committed by state officials. *See Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). There are two types of due-process claims -- procedural and substantive. To prevail on either claim, Grater must show a violation of a constitutional right by someone acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

***Procedural Due Process***

Procedural due process "protect[s] persons from deficient procedures that lead to the deprivation of cognizable liberty interests." *Schulkers v. Kammer*, 955 F.3d 520, 545 (6th Cir. 2020) (citations omitted). It "is traditionally viewed as the requirement that the government provide a 'fair procedure' when depriving someone of life, liberty, or property.'" *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). "To establish a procedural due process violation, [p]laintiffs must show (1) that they have been deprived of a cognizable [property] interest, and (2) that such deprivation occurred without adequate procedural protections." *Golf Vill. N., LLC v. City of Powell*, 14 F.4th 611, 623 (6th Cir. 2021) (quoting *Schulkers*, 955 F.3d at 545). To determine what procedural protections the Constitution requires in a particular case, the Supreme Court has outlined three factors:

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedures would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 321 (1976).

Generally, when the state "seeks to terminate [a protected] interest . . . , it must afford 'notice and opportunity for hearing appropriate to the nature of the case' before the termination becomes effective." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 729

4

(6th Cir. 2011) (quoting *Bell v. Burson*, 402 U.S. 535, 542 (1971)). The test for reasonable notice looks at "whether 'many notice efforts amounted in the aggregate to a reasonable effort to apprise [plaintiff] of what was going on.'" *McWain v. Clay Twp.*, 2022 WL 952730, at *4 (S.D. Ohio 2022) (quoting *Ming Kuo Yang v. City of Wyoming*, 793 F.3d 599, 604 (6th Cir. 2015)). Reasonable notice includes post-hearing notice, so long as it takes place prior to the termination of a protected interest. *Id*. *See also Fuentes v. Shevin*, 407 U.S. 67, 82 (1972) ("[T]he Court has traditionally insisted that, whatever its form, opportunity for that hearing must be provided before the deprivation at issue takes effect.").

### *Substantive Due Process*

"[S]ubstantive due process requires that both state legislative and administrative actions that deprive the citizen of 'life, liberty or property' must have some rational basis." *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1223 (6th Cir. 1992). It protects "certain rights, regardless of the procedures used." *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 765 (6th Cir. 2020) (citation omitted). To prove a substantive-due-process violation, Grater must demonstrate a constitutionally protected liberty interest that "has been deprived through arbitrary and capricious action." *EJS Props.*, 698 F.3d at 855 (quoting *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 573 (6th Cir. 2008)). The second prong requires "conscience-shocking behavior" -- meaning more than mere negligence. *Siefert*, 951 F.3d at 766 (considering the "nature of the relationship between the government and the plaintiff, and whether a legitimate government purpose motivated the official's act"). To meet this high bar, the actions must be "so brutal and offensive that they do not comport with traditional ideas of fair play and decency." *Range v. Douglas*, 763 F.3d 573, 589–90 (6th Cir. 2014) (cleaned up).

***Ohio Revised Code 505.87***

Under R.C. 505.87(A), "[a] board of township trustees may provide for the abatement, control, or removal of vegetation, garbage, refuse, and other debris from land in the township, if the board determines that the owner's maintenance of that vegetation, garbage, refuse, or other debris constitutes a nuisance." At least seven days before beginning the abatement process, the board must notify the owner that he or she "is ordered to abate, control, or remove the vegetation, garbage, refuse, or other debris, the owner's maintenance of which has been determined by the board to be a nuisance" and that failure to do so will result in the township providing for abatement and assessing a lien against the property for the removal costs. R.C. 505.87(B).

There are two ways Grater can prevail on his due-process claim. He may demonstrate the above statute is unconstitutional "as applied" to his case, or that it is "facially" unconstitutional. Each avenue is addressed.

### "AS APPLIED" CONSTITUTIONALITY

Grater first argues the R.C. 505.87 proceedings were unconstitutional because he did not receive notice and a hearing prior to the nuisance declaration (Doc. 14 at 17). The problem with this claim is that "*pre-seizure* hearings are *not constitutionally mandated*, as long as interested persons receive notice and a timely *post-seizure* opportunity to be heard prior to forfeiture." *Ross v. Duggan*, 402 F.3d 575, 584 (6th. Cir. 2004) (emphasis in original) (citation omitted). "Post-hearing notice alone may satisfy due process so long as the interested party still has another meaningful opportunity for a hearing." *Ming Kuo Yang*, 793 F.3d at 604 (cleaned up). That is because "[t]he subsequent hearing cures any lack of notice about the initial hearing." *Id.*

Grater's dispute with the Township is replete with process. First, he received several years' worth of notice and multiple opportunities to be heard *prior* to the nuisance determination. Second, after the hearing declaring his property a nuisance, he was notified *and* provided an evidentiary hearing before the abatement occurred (Docs. 1-2, 12-6, 22). This easily satisifies due process. "[T]here is no due process violation when the municipality abates a nuisance pursuant to notice." *Crow v. City of Springfield*, 15 F. App'x 219, 224 (6th Cir. 2001) (citations omitted).

Grater attempts to salvage his claim by arguing that, even though he was afforded a hearing, bias in the review process renders it unconstitutional (Doc. 14 at 7):

> [T]he Trustees that had previously signed the Notice declaring [] Grater's property a nuisance refused to recuse themselves from the proceeding -- in spite of the fact that they had plainly prejudged [his] property and were incapable of receiving evidence at the hearing in an unbiased manner.

That's not enough to demonstrate a due-process violation. Simply declaring a property a nuisance, pursuant to a lawful statute, does not reveal pre-existing bias. *See, e.g.*, *Newsome v. Batavia Loc. Sch. Dist.*, 842 F.2d 920, 926 (6th Cir. 1988) (holding that "the participation of the school principal and the superintendent in the closed deliberations of the school board when [an expelled student] and his counsel were not allowed to attend" did not violate due process). Nor does Grater allege, let alone support any conflict of interest. *See, e.g.*, *Schweiker v. McClure*, 456 U.S. 188, 195 (1982) (noting there is a presumption that hearing officers are unbiased, and plaintiff has the burden to rebut by "showing [a] conflict of interest or some other specific reason for disqualification"); *Playter v. F.A.A.*, 933 F.2d 1009 (6th Cir. 1991) (table) (finding no "support for the bald proposition . . . that agency members who participate in an investigation are disqualified from adjudicating").

Next, the parties argue at length over whether the October 9 Township hearing was "quasi-judicial" in nature (Tr.[1] at 33–34). If so, Grater would be entitled to judicial review in state court.

---

[1] The citation "Tr." refers to the unofficial transcript of the Hearing held June 15, 2022.

7

*See, e.g.*, *State ex rel. Lanter v. City of Cincinnati*, 2020-Ohio-4973, ¶ 1 (Ohio Ct. App. 2020). At the hearing, the parties made legal arguments and objections, presented exhibits, and also examined and cross-examined sworn witnesses (Doc. 22). On appeal, the state court held the Township hearing was not quasi-judicial, because the Township was not required to give Grater an opportunity to contest the nuisance determination:

> Before taking action, the Township Trustees must provide notice of the action to be taken and to provide an opportunity for the owner to remove, repair, or secure the structure on their own or to come to an agreement with the Trustees regarding the structure. The statute does not require or provide that the Trustees must allow the property owner to contest the determination that a structure is insecure, unsafe, or structurally defective.

*Grater*, 2021-Ohio-1929, ¶ 19 (citation omitted). This Court disagrees with that determination. R.C. 505.87 may not require a hearing prior to the nuisance determination, but procedural due process requires an opportunity to be heard prior to abatement of a nuisance. Nonetheless, the state-court decision is of no moment because Grater received his hearing -- not to mention several levels of judicial review -- before the abatement.

A final point. With respect to substantive due process, Grater argues the determination was "arbitrary" (Tr. at 16). To prevail on such a claim, "[Grater] must show that the state administrative agency has been guilty of arbitrary and capricious action in the strict sense, meaning that there is no rational basis for the administrative decision." *Brody v. City of Mason*, 250 F.3d 432, 438 (6th Cir. 2001) (cleaned up). The record evidence shows otherwise. Grater points out that the Township did not visit his property during the two years prior to the determination (Tr. at 16). But the Township counters that a follow-up inspection did not take place because there was sufficient drive by observation the nuisance existed. Grater also refused to allow access to the property (*id.* at 8–11). The record reveals no "conscience-shocking" behavior by the Township. *Siefert*, 951 F.3d at 766.

#### FACIAL CONSTITUTIONALITY

"Generally, to succeed in a typical facial attack, a plaintiff must establish that no set of circumstances exists under which the statute would be valid. Or, a plaintiff would have to establish that the statute lacks any plainly legitimate sweep." *Langston v. Charter Twp. of Redford*, 623 F. App'x 749, 756 (6th Cir. 2015) (citation omitted). The fact that Grater's own case demonstrates a "legitimate" and constitutional application of R.C. 505.87 forecloses this claim. Grater makes two arguments.

Grater first recycles the same argument used above -- R.C. 505.87 is facially unconstitutional because it lacks an adequate notice requirement and a provision guaranteeing an opportunity to be heard (Doc. 14 at 9–12). R.C. 505.87 is not unconstitutional merely because it lacks a provision guaranteeing a hearing. Take, for instance, *Young v. City of Sandusky*, where plaintiff challenged a nuisance statute allowing removal of junk vehicles. 2005 WL 1491219 (N.D. Ohio 2005). That statute, which used language similar to R.C. 505.87, "provide[d] no provision for the opportunity to have a hearing to appeal the seizure of the nuisance property," but did "not prohibit the City from providing such hearing." *Id.* at *9. The district court granted summary judgment as to the facial constitutionality claim, stating that "Chapter 531 is not facially unconstitutional" for lack of due process. *Id. See also Ming Kuo Yang*, 793 F.3d at 604 (noting that post-hearing notice is effective so long as a party still has a "meaningful opportunity" to be heard).

State courts have made the same finding: "The court reconfirms its prior holding that [] R.C. 505.87 [is] lawful exercise[] of legislative authority under both the United States and Ohio Constitutions. Similar statutes in the municipal context have been upheld as constitutional." *Chalker v. Howland Twp. Trs.*, 74 Ohio Misc.2d 5, 12 (Ohio Com. Pl. 1995). This is so even if the statute does not provide for a hearing because "due process is still required" and "[t]he right to hearing,

9

therefore, is inferred." *Id.* at 24. In other words, as long as the statute does not *preclude* a hearing, it does not violate due process.

Second, Grater again asserts that "a lack of judicial review provision renders the entire statute facially unconstitutional" (Doc. 14 at 10). As a general point, judicial review is not required for a statute to comply with due process. *See Schweiker*, 456 U.S. at 197–98 (noting that judicial involvement is not required to meet the due-process demand of an impartial tribunal). Grater points to *Deja Vu of Nashville, Inc. v. Metropolitan Government of Nashville & Davidson County, Tennessee*, 274 F.3d 377, 403 (6th Cir. 2001) to support his argument. That case addressed the constitutionality of a licensing law, which did not include a provision for speedy judicial review of a license denial. The Sixth Circuit found a "pure licensing scheme" was unconstitutional for lack of such provision. *Id.* at 400, 403. "Because all of the statutory provisions were dependent on the existence of a license, the unavailability of judicial review of license denials rendered the entire ordinance unconstitutional." *Cam I, Inc. v. Louisville/Jefferson Cnty. Metro Gov't.*, 460 F.3d 717, 721 (6th Cir. 2006) (citing *Id.*). But that's a First Amendment issue -- free speech case law requires "expedited judicial review of license denials." *Id.* at 720. Due process does not. And in *Cam I, Inc.*, the Sixth Circuit noted that as long as the zoning laws -- which lacked a judicial-review provision -- were "independent from the [unconstitutional] licensing [scheme]," they were facially constitutional and enforceable. *Id.* at 722. The same is true of R.C. 505.87.

### Takings Claim

Grater tosses up a Hail Mary, asserting that, even if R.C. 505.87 is constitutional, the abatement of his property constitutes an uncompensated taking under the Fifth Amendment (Doc. 14 at 14–5). This last gasp also fails.

The Fifth Amendment guarantees that "private property shall not be taken for a public use without just compensation," and is "designed to bar Government from forcing some people alone to

bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States,* 364 U.S. 40, 49 (1960).  However, "while conferring substantial protection on property owners, [the Takings Clause] does not eliminate the police power of the State to enact limitations on the use of their property." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1033 (1992) (Kennedy, J., concurring).  "Long ago it was recognized that all property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community, . . . and the Takings Clause did not transform that principle to one that requires compensation whenever the State asserts its power to enforce it." *Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 491–92 (1987) (cleaned up).  The reason for this is clear:  "[Because] no individual has a right to use his [or her] property so as to create a nuisance or otherwise harm others, the State has not 'taken' anything when it asserts its power to enjoin the nuisance-like activity." *Keystone Bituminous Coal*, 480 U.S. at n.20.

With no constitutional right to maintain a nuisance, no compensation is required for the abatement of one.  Grater was using his property as a junkyard (*see* Docs. 22 at 18, 49–50; 22-2).  This was a non-conforming use that violated the Township zoning laws.  As outlined above, the Township had authority under its police power to abate the nuisance.  *See Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2079 (2021) ("[T]he government owes a landowner no compensation for requiring him to abate a nuisance on his property, because he never had a right to engage in the nuisance in the first place").  Moreover, Grater did *not* go uncompensated.  The Township credited him nearly $171,770 for his scrap (Doc. 21-1), an amount he does not dispute.

## Conclusion

"[T]here is no due process violation when the municipality abates a nuisance pursuant to notice." *Crow*, 15 F. App'x at 224 (citations omitted).  R.C. 505.87 is constitutional, both facially

11

and as applied to the facts of this case. The Township properly followed the requirements of R.C. 505.87 and provided several opportunities for Grater to be heard.

The federal constitutional claims are dismissed. This Court declines to exercise jurisdiction of the accompanying state-law claims, which are dismissed without prejudice. *See* 28 U.S.C. § 1367(c)(3).

IT IS SO ORDERED.

                                                  s/ *Jack Zouhary*
                                                  JACK ZOUHARY
                                                  U. S. DISTRICT JUDGE

                                                  July 13, 2022